**M & S BUILDING SUPPLIES, INC., Blake Construction Company, Inc.**

v.

**Joel I. KEILER, Esq., Appellant.**

**M & S BUILDING SUPPLIES, INC., Appellant,**

**Blake Construction Company**

v.

**Joel I. KEILER, Esq.**

**M & S BUILDING SUPPLIES, INC., a District of Columbia Corporation,**

**Blake Construction Company, Inc., a District of Columbia Corporation, Appellant,**

v.

**Joel I. KEILER, Esq.**

**Nos. 83–1751, 83–1755 and 83–1756.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 9, 1984.

Decided June 29, 1984.

Joseph F. Cunningham, Washington, D.C., with whom David D. Hudgins, Washington, D.C., was on the brief, for Keiler, appellant in No. 83–1751 and cross-appellee in Nos. 83–1755 and 83–1756. Alan D. Keiler, Washington, D.C., also entered an appearance for Keiler.

Geoffrey P. Gitner, Washington, D.C., with whom William F. Krebs, Washington, D.C., was on the brief, for M & S Bldg. Supplies, Inc., et al., appellees in No. 83–1751 and cross-appellants in Nos. 83–1755 and 83–1756.

Before WRIGHT, EDWARDS and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case is an appeal from a decision of the District Court in a legal malpractice action brought by plaintiffs Blake Construction Company ("Blake") and M & S Building Supplies, Inc. ("M & S"), against their former labor attorney, Joel I. Keiler. Following a bench trial, the District Court found that Blake had employed Keiler to advise and represent it with regard to a labor problem, that Keiler negligently advised Blake, and that this negligence was the proximate cause of $63,761.61 in damages to Blake. *See M & S Building Supplies, Inc. v. Keiler*, 564 F.Supp. 1566 (D.D.C.1983). Keiler appeals from the trial court's judgment awarding damages to Blake, and Blake and M & S appeal from the court's exclusion of one element of alleged damages from the judgment. We conclude that all of the alleged damages were proximately caused by the plaintiffs' egregiously anti-union conduct that was beyond the scope of Keiler's advice and that Blake took of its own volition. Accordingly, because it has not been shown that Keiler's legal counsel was the proximate cause of any compensable injury to the plaintiffs, we reverse the judgment of the District Court awarding damages to Blake.

I. BACKGROUND

A. *The Facts*

Blake is a District of Columbia corporation engaged in the construction business. Until February 1978, Blake owned and operated a yard and warehouse located at 5700 Columbia Park Road, Landover, Maryland (the "Landover Yard" or "Yard"). As a member of the Construction Contractors Council, Inc. ("3Cs"), a multiemployer bargaining unit, Blake was subject to the col-

lective bargaining agreement (the "contract") entered into by the 3Cs and Local 639 of the International Brotherhood of Teamsters (the "Union"), which was in effect from August 1, 1975 to April 30, 1978.

The work force at the Landover Yard generally comprised between 40 and 70 employees, including six or seven truck drivers and various other workers collectively referred to as "warehousemen." Although the warehousemen performed work that fell within job classifications under the contract, Blake construed the agreement to cover only the truck drivers and not the warehousemen. In addition, all of the truck drivers but none of the warehousemen were members of the Union.

Until mid-1977, the Union apparently acquiesced in the company's interpretation excluding warehousemen from coverage under the Union contract. In mid-1977, however, a new slate of Union officers was elected. Thereafter, the Union aggressively sought to represent the warehousemen and have Blake apply the contract to the warehousemen as well as to the truck drivers. Blake refused to accede to these demands and the Union responded on January 19, 1978, by filing an unfair labor practice charge with the National Labor Relations Board ("NLRB" or "Board"). The Union charged Blake with violating sections 8(a)(1) and (5) of the National Labor Relations Act (the "Act"),[1] alleging that:

> On or about August 1, 1977, and continuing since such date, the Employer has unilaterally changed the terms of an existing contract by refusing to pay the contract rate to its employees represented by the charging party herein; and furthermore has refused to bargain with the recognized bargaining representative concerning such matter.

Charge Against Employer (Jan. 19, 1978), *reprinted in* Joint Record Excerpts ("J.R. E.") 61a.

On February 10, 1978, the president of Blake called attorney Keiler and asked him to meet with company officials to advise Blake on how to handle the labor problem with the Teamsters. Keiler, a Virginia resident and a member of the District of Columbia bar, had handled miscellaneous labor matters for Blake in the past. The parties offer different accounts of what occurred at the meeting between Keiler and company officials. It is clear, however, that a plan was adopted to subcontract the Yard work to M & S, and that Keiler offered Blake advice about how to carry out the plan. M & S is a District of Columbia corporation formed in 1974 by Blake principals to make wholesale purchases of equipment and supplies for Blake. M & S has the same corporate headquarters and the same principal shareholders and officers as Blake. As of February 10, 1978, M & S employed only a single person part-time to experiment with a "tire fill" process to repair damaged tires on construction equipment.

On February 17, 1978, a week after the meeting between Keiler and company officials, Blake and M & S entered into a contract providing that M & S would furnish all personnel for the operation of the

---

1. Section 8(a) of the Act provides in pertinent part that:

    It shall be an unfair labor practice for an employer—

    (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

    ....

    (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization ...;

    ....

    (5) to refuse to bargain collectively with the representatives of his employees ....

29 U.S.C. § 158(a) (1982).

Section 7 of the Act, to which section 8(a)(1) refers, provides that:

    Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all such activities

    ....

29 U.S.C. § 157 (1982).

Landover Yard and for the operation of all Blake trucks transporting materials and supplies. Blake management then informed the Yard employees that they were being laid off, but that they would be offered jobs at M & S beginning on February 20, 1978, the following Monday. A Union representative who investigated the layoff was told that the company would not honor the contract but would deal directly with the employees on an individual basis. M & S offered the Yard warehousemen the same jobs they had been performing at Blake at the same rates of pay. M & S also offered the Yard truck drivers the same jobs they had been performing at Blake, but at substantially reduced rates of pay that varied with the individual. One of the truck drivers, the Union shop steward, refused to work at a reduced rate of pay and left the company.

On February 27, 1978, the Union filed an amended unfair labor practice charge with the NLRB. The amended charge reiterated the allegation of the original charge and in addition alleged that Blake violated sections 8(a)(1), (3) and (5) of the Act by terminating the employment of all of its employees on or about February 17, 1978, because of their membership in and activities on behalf of the Union. On March 14, 1978, the Union filed a second amended charge, which added M & S as a charged party but otherwise was identical to the first amended charge.

On March 30, 1978, the NLRB General Counsel issued a complaint against Blake and M & S. The complaint alleged that M & S was at all material times the alter ego of Blake and that as a result of its conduct on February 17 and 20, 1978, *with respect to the truck drivers*, Blake had engaged in and was engaging in unfair labor practices as defined in sections 8(a)(1), (3) and (5) of the Act. Specifically, the complaint alleged that:

> On or about February 17, 1978, Respondent Blake discriminated against the employees named below by ostensibly ceasing its business operations and terminating their employment, all because

of their membership in, assistance to and activities on behalf of the Union and to avoid its bargaining obligation with the Union:

[Names of six truck drivers]

Complaint and Notice of Hearing ¶ 8 (Mar. 30, 1978), *reprinted in* J.R.E. 66a–67a. The complaint also specifically alleged that Blake constructively discharged, because of his Union membership and activities, the truck driver who had refused to accept employment with M & S at a reduced rate of pay. The complaint, unlike the Union's original charge, *did not include* any specific allegations that Blake violated the Act by failing or refusing to apply the contract to the *warehousemen* or by refusing to deal with the Union on behalf of the *warehousemen*. *See NLRB v. Blake Construction Co.*, 663 F.2d 272, 277, 279 (D.C.Cir. 1981).

Keiler defended Blake and M & S at the hearing before an Administrative Law Judge ("ALJ"). The ALJ ruled that M & S was at all material times the alter ego of Blake and that Blake had violated sections 8(a)(1), (3) and (5) of the Act as alleged in the General Counsel's complaint. The ALJ's proposed remedy required Blake and M & S, *inter alia*, to recognize and bargain with the Union and to apply the contract retroactively "to the employees of Blake and M & S at the Columbia Park Road facility, and make them whole for any wage and benefit losses they may have suffered by reason of Respondents' failure to apply the contract to them." ALJ's Decision and Order at 13–14, *reprinted in* J.R.E. 106a–107a. It was not clear, however, whether this remedy applied only to the truck drivers, or to the warehousemen as well. On appeal, the NLRB affirmed the ALJ's decision and adopted his recommended order with one modification: the Board added a bargaining unit description that made it clear that the remedy applied to all employees, *i.e.*, including warehousemen *and* truck drivers, working for the company within the job classifications listed in the contract.

In the summer of 1980, Blake dismissed Keiler as its attorney and retained Seyfarth, Shaw, Fairweather & Geraldson to assess its prospects on an appeal of the Board's decision to this court. Before any decision was reached, however, the Board filed a petition for enforcement. Seyfarth, Shaw decided to concede that M & S was the alter ego of Blake and that Blake and M & S had violated sections 8(a)(1), (3) and (5) of the Act by its conduct with regard to the truck drivers, as alleged in the General Counsel's complaint. Seyfarth, Shaw argued, however, that the portions of the Board's order relating to the warehousemen should not be enforced, because those portions were premised on Blake's violation of sections 8(a)(1) and (5) through failure to extend the benefits of the contract to the warehousemen and through refusal to deal with the Union as the representative of the warehousemen, which had neither been alleged in the General Counsel's complaint nor fully and fairly litigated in the ensuing proceedings. The court of appeals rejected the Board's counter-argument that Blake had waived this due process issue, and expressly found that Blake, represented by Keiler, had adequately preserved the issue before the Board. *NLRB v. Blake Construction Co.*, 663 F.2d 272, 283–84 (D.C. Cir.1981). The court of appeals then denied enforcement of the portions of the Board's order relating to the warehousemen.[2] *Id.* at 274, 283.

B. *The Proceedings Below*

On February 13, 1981, Blake and M & S filed a legal malpractice action against Keiler in the District Court. Jurisdiction was based on diversity of citizenship, 28 U.S.C. § 1332 (1982). The plaintiffs alleged that Keiler "negligently failed to advise plaintiffs of all the necessary actions which the plaintiffs were required to take in order to establish M & S as a valid and legal non-union corporation whose purpose it was to operate the trucking and warehouse activities previously conducted by

Blake prior to February 17, 1978 at the Landover yard." Complaint ¶ 18, *reprinted in* J.R.E. 31a.

At the close of a non-jury trial, the District Court found that Keiler "failed to meet the applicable standard of care of the ordinarily competent and diligent labor attorney in the same or similar circumstances which required the client to be told that what was being done—no matter whose idea it was initially—simply could not be done legitimately." *M & S Building Supplies, Inc. v. Keiler*, 564 F.Supp. 1566, 1570 (D.D.C.1983). The District Court concluded that Blake was entitled to recover as damages proximately caused by Keiler's professional negligence the $4,377.75 that Blake had paid Keiler over the course of his representation of Blake and M & S; the $57,-317.50 that Blake paid to Seyfarth, Shaw "to reorient its defense, restore its credibility, and persuade the court of appeals to redefine the measure of its potential liability for back pay;" and $2,066.36 in appeal costs. *Id.*

The District Court rejected Blake and M & S's claim of damages for their expected liability for back pay for the truck drivers who were discharged from the Blake payroll at Union scale wages on February 17, 1978, and hired on the M & S payroll at substantially lower wages on February 20, 1978. The District Court reasoned, *inter alia*, that this damage was proximately caused by Blake alone, because Blake reduced the truck drivers' wages of its own volition, and Keiler never affirmatively assured Blake or M & S that it could pay any employee at less than Union scale with impunity. *Id.* at 1571.

Keiler appeals from the District Court's judgment in favor of Blake. The plaintiffs appeal from the District Court's rejection of their claim of damages for their expected liability for back pay for the truck drivers.

---

2. The court of appeals granted enforcement of the portions of the Board's order relating to the

truck drivers.

## II. ANALYSIS

Under District of Columbia law, "[i]n a suit against an attorney for negligence, the plaintiff must prove three things in order to recover: (1) The attorney's employment; (2) his neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the client." *Niosi v. Aiello,* 69 A.2d 57, 60 (D.C.1949) (quoting *Maryland Casualty Co. v. Price,* 231 F. 397, 401 (4th Cir.1916)).

Tracking the above three elements, the District Court in the present case found, first, that Keiler was employed by Blake on or about February 10, 1978, to advise and represent Blake in connection with its labor problem at the Landover Yard. This "labor problem" consisted of the dispute between the Union and Blake management over whether the collective bargaining contract applied to the warehousemen at the Yard. Prior to Keiler's employment, this dispute had culminated in the Union's January 19, 1978 unfair labor practice charge alleging that Blake was violating sections 8(a)(1) and (5) of the Act by refusing to pay the contract rate to the warehousemen and by refusing to bargain with the Union concerning the matter. *It is clear that the "labor problem" did not involve the truck drivers at the Yard.* Blake had always treated the contract as applying to the six or seven truck drivers working at the Yard, and there is no indication whatsoever that Blake sought Keiler's advice in order to evade its contractual obligations to the truck drivers.

The District Court found, second, that Keiler neglected a reasonable duty to advise Blake that it could not legitimately solve its labor problem—the Union's demand that it apply the contract to the *warehousemen*—by subcontracting the Yard work to M & S. The District Court made no finding, however, that Keiler ever suggested that Blake could use subcontracting to avoid its contractual obligations to the *truck drivers.* Indeed, the court found that it was "undisputed that Blake reduced the truck drivers' wages of its own volition in February, 1978, and that Keiler never affirmatively assured Blake or M & S that it could pay any employee at less than Union scale with impunity at any time." *M & S Building Supplies, Inc. v. Keiler,* 564 F.Supp. 1566, 1571 (D.D.C. 1983). Nor do we find persuasive appellants' argument that it should have been foreseeable that Blake would act on Keiler's general advice concerning subcontracting by refusing to apply the contract to the truck drivers, given that Blake had never disputed the applicability of the contract to the truck drivers or suggested that it was a problem. The District Court also made no finding that Keiler was negligent in his representation of Blake before the ALJ and the Board, and, indeed, the plaintiffs did not allege such negligence in their complaint.

Finally, the District Court found that Keiler's negligent advice was the proximate cause of damages to the plaintiffs totalling $63,761.61. When Blake dismissed Keiler as its attorney in the summer of 1980, Blake arguably had sustained actual or potential losses equal to the amount paid to Keiler to represent it before the ALJ and the Board, the amount of its back pay liability to the warehousemen as a result of the Board's order, and the amount of its back pay liability to the truck drivers as a result of the Board's order. Blake succeeded in mitigating these alleged damages by retaining successor counsel to defend it against enforcement of the portion of the Board's order imposing liability for back pay to the warehousemen. Accordingly, the District Court awarded the plaintiffs damages equal to the fees paid to Keiler plus the appeal costs and fees paid to successor counsel in mitigation of damages. The District Court refused to award the plaintiffs damages in the amount of their expected back pay liability to the truck drivers, however, on the ground, *inter alia,* that Blake's own action and not Keiler's negligent advice was the proximate cause of this liability.

We conclude that the District Court's findings that Keiler was employed by Blake and that Keiler negligently advised

Blake with respect to the labor problem concerning the warehousemen are supported by the evidence and are not clearly erroneous. We similarly sustain the District Court's finding that Keiler's negligent advice with respect to the labor problem concerning the warehousemen was *not* the proximate cause of Blake's back pay liability to the truck drivers. We conclude, however, that the District Court committed clear error in finding that Keiler's negligent advice *was* the proximate cause of the plaintiffs' other losses—*i.e.,* the fees paid to Keiler for representation before the ALJ and the Board and the appeal costs and fees paid to successor counsel in mitigation of damages resulting from the portions of the Board's order relating to the warehousemen. In making this latter finding of proximate cause, the District Court failed adequately to consider the sequence of events involved in this case.

All of Blake's losses—in fees, court costs and back pay liability—resulted from the General Counsel's complaint and the subsequent Board order. However, as this court determined in *NLRB v. Blake Construction Co.,* 663 F.2d 272 (D.C.Cir.1981), the General Counsel's complaint alleged that Blake violated sections 8(a)(1), (3) and (5) of the Act solely by virtue of its treatment of the truck drivers. The complaint did not challenge Blake's treatment of the warehousemen under sections 8(a)(1) and (5). It is therefore clear that if Blake had limited itself to following Keiler's negligent advice, and had used subcontracting with M & S only as a device to attempt to avoid its disputed contractual obligations to the warehousemen, the company would not have been subject to the General Counsel's complaint. Blake only became subject to that complaint because, *of its own volition and without advice from Keiler,* it used the subcontracting as a device to attempt to avoid, in addition, its undisputed contractual obligations to the truck drivers. We therefore conclude that Keiler's negligent advice concerning Blake's labor problem involving only the warehousemen was not the proximate cause of Blake's costs and liabilities arising from the General Coun-

sel's complaint involving only the truck drivers, and that Blake cannot reasonably recover for the costs or liabilities incurred as a result of that complaint.

The foregoing analysis makes clear that Keiler cannot be held liable for Blake's legal fees for representation before the ALJ and the Board. Blake employed Keiler to present its defense in these administrative proceedings. There is no finding by the District Court, nor even any allegation in Blake's complaint, that Keiler negligently defended Blake. Keiler was unable successfully to defend Blake's conduct involving the truck drivers—conduct for which Keiler was not responsible—but we can imagine no valid defense that would have been available. In any case, it is undisputed that Keiler told Blake that it would probably lose in these administrative proceedings. We therefore conclude that Blake cannot recover in this negligence action the fees it paid Keiler for conducting its defense.

Similarly, Keiler cannot be held liable for Blake's appeal costs or the fees it paid successor counsel to defend it in the court of appeals against enforcement of the Board's order. That order resulted from the General Counsel's complaint involving the truck drivers. Although the order required Blake to provide back pay to the warehousemen as well as to the truck drivers, Keiler certainly cannot be held responsible for what this court subsequently found to amount to a due process violation by the Board in ordering a remedy that exceeded the scope of the complaint, particularly when Keiler preserved the due process issue on which successor counsel ultimately prevailed by raising it initially before the Board. We also note that successor counsel clearly did not "restore [Blake's] credibility," as the District Court suggests. To the contrary, the court of appeals upheld a broad remedial provision of the Board's order because it agreed with the Board that Blake's "unlawful conduct was egregious and widespread and demonstrated a general disregard for the employees' fundamental statutory rights." 663

F.2d at 285. Indeed, the court of appeals referred to Blake's conduct as "reminiscent more of the pre-National Labor Relations Act era of industrial warfare than of the latter Twentieth Century." *Id.* at 286.

### CONCLUSION

Because the plaintiffs' losses resulting from their attempt to evade their contractual and bargaining obligations at the Landover Yard were proximately caused by the plaintiffs' own uncounseled actions and not by the advice given by the defendant, the plaintiffs cannot recover those losses from the defendant in this legal malpractice action. Accordingly, the judgment of the District Court entered against the defendant for $63,761.61 is

*Reversed.*